May it please the Court, The Board of Immigration Appeals erred in dismissing the Petitioner's denial of the Petitioner's application for cancellation of removal. The Board's dismissal was an abuse of discretion because the Board offered only conclusory reasoning in support of its decision, overlooked evidence and mischaracterized the record in its finding that Guadalupe, the qualifying relative, her mental health concerns did not rise to the level of exceptional and extremely unusual hardship which is needed to qualify for cancellation of removal. You agree that this is all committed to the discretion of the Court, correct? Your Honor, this Court has to weigh the factors differently, isn't that what you're asking? Your Honor, we're not looking for a review of the, there's no dispute of facts here. We're not looking for a review of any facts. We're looking for the Court to review the error that the Board committed through its abuse of discretion. This Court has jurisdiction to review this action and to review the Board's decision under 8 U.S.C. section 1252 and it is not barred by section 1252A to B.I. This Court's jurisdiction falls under the exception because the judgment concerns constitutional claims and questions of law pursuant to section 1252A to D. The question of law is that the Board abused its discretion in denying the petitioner's appeal because the Board's fact finding was flawed by an error of law. It was an error of law because the facts have been overlooked and seriously mischaracterized and if I could, I'd like to point out specifically where that mischaracterization is. The Board's decision refers to Guadalupe had made and appeared to have made progress with her mental health. However, throughout the record, the mother testified, the respondent testified, Guadalupe testified, and their counselor testified that she would relapse. That her depression would be aggravated if the father left and it's not just that the father would be leaving, it would be both mother and father would be leaving. So the issue of the aggravation of those mental health depression symptoms is what is at question here. Because the Board of Immigration Appeals mischaracterized that relapse and that is what we're focusing on. That mischaracterization leads the respondent to seek that this court make a decision that the Board erred and abused its discretion, which is a question of law. And therefore, the respondent seeks that this court remand and reverse the Board's denial of cancellation of removal. And you may have touched on this already, but what in your view are the important facts that were either completely overlooked or severely mischaracterized? That's how you describe it in your petition. Yes, thank you for that. What exactly were those facts? Those facts can be found that, number one, the depression is still a problem, not that it has progressed or made progress. You can find that in the record at page 203. The respondent testified that she's been taken to the hospital numerous times. You can find that in the record at 132. How are those incompatible? In other words, how is progress incompatible with something still being a problem? The Board is stating that Guadalupe's mental health has improved. And the mother is saying it's still a problem and not only that. My question is how are those two things incompatible? So there may still be a problem, but she's making progress. Does that sound like an incompatible or nonsensical sentence? Those are compatible. However, what I'm looking at here is that her symptoms will be aggravated. So if the father left and the mother left, those symptoms of depression would be aggravated. And her progress is not incompatible with still having a problem, but I'm looking at the aggravated nature of the symptoms, which would happen if the father left. Thank you, Ms. O'Neil-Baker. I've given you some extra time, but you reserve one minute. Thank you. Mr. Marconda. May it please the court. Good morning. Scott Marconda, MARCLDA, on behalf of Respondent, the Attorney General of the United States. Can you speak up just a little bit? Yes, Your Honor. As a matter of fact, your clerk warned me. Thank you. Can you hear me now? Yes, I think so. I'm a Marine, 30 years retired. I've never been accused of being too quiet, but I'll endeavor to make myself better heard. I apologize. The record does not compel the result. Counsel, this was not a violent criminal, was he, Mr. Zavala? No, ma'am. No, Your Honor. He's being removed because he's got too drunk to drive it, a conviction. Is that it? No, he didn't have proper documentation in order to enter the United States in the first place. Even without documentation? Yes, ma'am. But the reason he's being removed is because he had two DWIs on his record. That's how you found him? That's how he came to the attention of DHS. Yes, ma'am. He originally entered the United States in 1993. I think his most recent entry was 1998. Sometime after that time, I think approximately 2016. He had a second arrest for DUI and as part of the rehabilitation and court appearance, and then he came to the attention of DHS. He admitted that he was not here lawfully, had not entered through inspection and parole, and was issued a notice to appear on that basis. So it seems to me, what do I know? I don't know too much about this. It seems to me that it's a misuse of the government's resources to break up this family. I mean, DWI is not exactly a crime that we worry about as much as violent crimes. There was no gun involved, no robbery, no assault, and yet we're breaking up this family, and this girl obviously will suffer. Is this the best use of our resources? That's all I'm asking, and I know it's rhetorical. I'm not going to make you defend DHS. I understand, Judge Puller. We are creatures of regulation, and the petitioner here wasn't being removed because of his DUI. He was being removed because, like many, he did not have proper documentation. He came to the attention because of that. That's where you found him. That's how we found him, and I think the board, to your question with regard to the separation, said that this is not exceptional or uncommon. Again, service members here the day after December 7th are separated from their families all the time, and it does cause depression, not to be cavalier, just to say that this is a common human circumstance, and I believe that's what the agency found here. They did not, if I can be specific, they did not overlook any evidence. They discussed the record at great length. They did not seriously mischaracterize any of that evidence. There's no documentation saying that Guadalupe has a severe medical condition. The closest you can come to that was when she was in the sixth grade. The same counselor said she had severe depression at that time as a sixth grader because of cyberbullying. Since that time, there's been no medical documentation saying that she has severe. She misses her father. I would hope that that's a normal circumstance of separation from a parent one loves. As you just indicated, Judge Puller, that kind of separation is difficult. He came here without inspection in 1998. I make that to be 24 years? Yes, ma'am. And apart from his DWIs, he's led a blameless life and raised these citizen children. That would appear to be the case. Yes, ma'am. Okay, I've made my points, I think. Yes, ma'am. To continue and just to wrap up, absent the Mendez factors of overlooking, seriously mischaracterizing, that there would be some sort of lack of rational justification for the agency's decision here that was somehow arbitrary, catricious, contrary to law, absent that, this court has time and again, as has the Supreme Court, as has the statute, said there's simply not jurisdiction to review this kind of discretionary determination by the agency, not in this regard. However sympathetic the facts may be, the Congress decided that this type of relief should be in compelling circumstances, extreme, exceptional, unusual. Was this one of those categories of cases that would have been subject of discretion or possible settlement? We have this tolling program, I'm just thinking about that. We've heard quite a bit about that in the last... Short answer, Judge Lohier? Correct. Thank you. I usually don't get that right. To answer directly, each office of the Chief Counsel does have discretion. This office, of course, would be New York. Factors that weigh against are prior criminal misconduct. The weight that's given that is obviously very fact-dependent, and it's not to say that the facts here would say that this person doesn't rate it, but it was considered in this case and was rejected in the discretion of our client. I don't know the rationale behind that. They see a lot of cases. I have nothing further unless the court has further questions for me. Thank you, sir. Thank you. Thank you, Your Honors. Cancellation of relief. Cancellation of removal is relief that is available to individuals who enter without inspection, are undocumented, if they can meet the criteria. And in this case, because of Guadalupe's mental health problems that are chronic, major depressive disorder and anemia, in which the record shows that she depends on physical comfort and proximity to her parents, and her condition worsened significantly when her father was detained and he was separated from her. Her symptoms will deteriorate rapidly if her father is removed. It is not a common occurrence, and this does rise to the level of exceptional and extremely unusual hardship. Thank you. Thanks very much. We reserve the decision. We thank you both for your arguments. The next case on our day calendar is 2532 Hunt Construction Group, Inc. v. Berkeley Assurance. Thank you. Just push it hard. Your Honors. Good morning, Your Honors. My name is Michelle Migdon from Cohen, Ziffer, Frenchman, and McKenna. I represent plaintiff appellant Hunt Construction Group. Hunt is a construction manager whose only job is to perform professional services on large construction projects across the United States. Hunt paid substantial premiums for years to Berkeley in order to get professional liability insurance for just such projects. However, when such claims arose, and here we have two separate claims on two projects, the Fairmont Austin and the Houston Methodist claim, Berkeley refused to comply with its very broad duty to defend Hunt under its policies. The district court below erred on a number of points, any one of which could be reversed to find a ruling for Hunt, but three points in particular. First, the district court in Berkeley wrongly held that Hunt's notice was late. It was not. Number two- That's assuming that the February 17th letter should have been turned over to Berkeley. Is that what you refer to? Correct. That's wrong. Number two, even if there was a validity to the late notice defense, it was waived under longstanding New York Court of Appeals authority. And three, on the Houston Methodist claim, they were wrong to find that there was no duty to defend when the complaint was replete with allegations of negligence and mismanagement. Now, on the Austin Fairmont claim to start, to step back and give a little bit of context, this is not a case in which Hunt received a lawsuit and sat on its rights. Instead, this is a case where Hunt was sued during the 1819 policy period, it provided timely notice to Berkeley shortly thereafter, and Berkeley instead looked back to find the February letter that you were referring to and say, aha, we have a basis to deny coverage, because there was an earlier letter in a period that we also provided coverage. The point is, what the New York Court of Appeals teaches, is that you can't create coverage if it's not there. And that's what you're asking us to do. That's what Hunt is asking Berkeley, to create coverage if it wasn't already there. You can't do that. Correct. That's actually on the waiver point, and that is very correct. The New York Court of Appeals in Schiff, 40 years ago, stated that there's two different kinds of defenses an insurer could have, some that may be waived and some that may not. It said that things relating to the existence or nonexistence of coverage, meaning the type of claim, the parameters of what's covered, here a professional liability claim, in a different policy a securities claim, that can't be waived, because that would create coverage. However, it made a very clear distinction, that when there's a condition precedent to coverage, it may be waived. And it gave the specific example of a timely notice of loss. That is exactly what we have here. And what case are you referring to? What page? No, what case? This is the Schiff case. The Albert Schiff versus Flack case, from the New York Court of Appeals. It's an old case, right? Yes, 1980. Well, then not old. Sorry. It's old in terms of law. It's all about perspective. Anyway, the Schiff case made very clear that conditions precedent to coverage could be waived. That is something that the insured must do in order to secure its coverage. And if it doesn't do it, it will forfeit it, or it might be waived. For example, if there's a professional liability case that's covered, and it gives notice within the period, it gets coverage. If it doesn't give notice, it doesn't. It's within the insured's control. It's an act, something the insured must do, or it forfeits coverage. The New York Court of Appeals made very clear that can be waived.